IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| MAXINE J. TAYLOR, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-12-2468 |
| ANNE ARUNDEL COUNTY, MARYLAND, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Maxine J. Taylor sued Anne Arundel County, Maryland (the "County")[1] and Michael Borgese (collectively, the "Defendants") for employment discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] and other claims. For the following reasons, Borgese's motion to dismiss will be granted.

---

[1] Taylor's complaint erroneously names "Anne Arundel County Government" as a defendant. *See* Compl. The Clerk will correct that error on the docket.

[2] 42 U.S.C. §§ 2000e, *et seq.*

I. Background[3]

On or about September 8, 2005, the County's Department of Detention Facilities[4] hired Taylor--an African American and lesbian female--as a Detention Officer I. Compl. ¶¶ 7-8, 11. At all relevant times, Borgese was a Captain at the Ordinance Road Correctional Center, and Taylor's supervisor. Id. ¶ 10. For several years, Taylor received the highest level rating on her annual Performance Planning and Appraisal Forms. Id. ¶ 12.

Sometime in November 2010, Borgese learned that Taylor was in a lesbian relationship. Compl. ¶ 13. Upon discovering Taylor's sexual orientation, Borgese "began a pattern of inappropriate sexually related comments and actions toward [her]." Id. ¶ 14. "Suddenly" in late November or early December 2010, Borgese told Taylor that he was going to change her shift. Id. ¶ 15. Taylor objected and Borgese said, "maybe we can work something out." Id. ¶ 16. He then let Taylor choose her own shift. Id.

---

[3] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] The Department "provides for public safety through the confinement of pretrial detainees and convicted offenders, and by offering alternatives to incarceration and re-entry services." Compl. ¶ 8.

In November and December 2010, Borgese began asking Taylor to eat lunch with him. Compl. ¶ 18. During the same period, Borgese asked Taylor about her body art and invited her to visit his tattoo artist with him[5]; invited Taylor to his home to "do 'P90X' workouts"; directed another female employee to show Taylor her body art during the work day; and asked Taylor to paint his girlfriend's naked body blue "like the movie Avatar" at his home while he watched. Id. ¶¶ 19-22.

On or about December 29, 2010, Borgese called Taylor to his office and, when she arrived, "suddenly hugg[ed] her and press[ed] her breasts against his chest." Compl. ¶ 23. Taylor immediately stated, "what are you doing," pushed Borgese away, and "quickly" left his office. Id. ¶ 24. After this event, Borgese changed Taylor's shift and did not permit her to choose the shift she wanted. Id. ¶ 25. Taylor was assigned to work on a shift with two of Borgese's closest friends. Id. ¶ 26.

Sometime in December 2010, Taylor began the application process for promotion to the rank of Corporal. Compl. ¶ 39.

Taylor's new shift began on January 10, 2011. Compl. ¶ 27. The next day, Taylor was notified she was under investigation for an "incident" involving her and two female inmates. Id. ¶

---

[5] Once, Borgese asked Taylor to come to his office to see the tattoo beneath his pant leg. Compl. ¶ 19.

28.[6] On February 2, 2011, Taylor received a recommendation that she be suspended for 18 days. *Id.* ¶ 29.[7] On February 28, 2011, Taylor attended a meeting to discuss the recommended discipline, at which time she told "management" that she intended to file a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC") for race and sex discrimination. *Id.* ¶¶ 30-31. After the meeting, Borgese "led" an "unprecedented" further investigation of Taylor, "to attempt to overcome" Taylor's evidence of discrimination. *Id.* ¶ 32. The County "permitted [Borgese] to taint the investigation and proposed discipline." *Id.* ¶ 34.

On or about March 16, 2011, Borgese recommended that Taylor be terminated. Compl. ¶ 35. On March 30, 2011, Taylor obtained the second-highest score at her interview for Corporal. *Id.* ¶ 40. On April 29, 2011, Taylor was suspended pending termination. *Id.* ¶ 36. On May 3, 2011, Taylor learned that she was one of the six officers eligible for promotion to the Corporal position. *Id.* ¶ 41. Taylor was "third on the list" and the only female candidate. *Id.* Six days later, Taylor was terminated. *See id.* ¶ 37. According to Taylor, at the time she

---

[6] Apparently, the alleged incident involved sexual misconduct. *See* Compl. ¶ 38 ("Defendants indicated that Ms. Taylor's sexual orientation was evidence that she had a propensity to engage in the alleged misconduct.").

[7] Taylor does not indicate who initiated the investigation or recommended her suspension. *See* Compl.

4

was terminated, white, male, and heterosexual officers "were not terminated for similar or more egregious alleged misconduct." *Id.* ¶¶ 43-45. Within two weeks after Taylor's termination, the other five eligible officers were promoted to Corporal. *Id.* ¶ 42.

On or about July 13, 2011, Taylor filed a Charge of Discrimination with the EEOC and the Maryland Commission on Civil Rights ("MCCR")[8]. Compl. ¶ 6.[9] On October 17, 2011, Taylor amended the Charge. *Id.*; *see* ECF No. 1-1. On August 20, 2012, Taylor filed suit. ECF No. 1.[10] On October 19, 2012, the County answered the complaint, and Borgese moved to dismiss. ECF Nos. 4, 5. On November 5, 2012, Taylor opposed Borgese's

---

[8] Previously known as the Maryland Commission on Human Relations.

[9] The original Charge is not in the record.

[10] The complaint pleads six causes of action:
  (1) Sexual harassment (hostile work environment), in violation of Title VII (against the Defendants);
  (2) Sex discrimination, in violation of Title VII (against the Defendants);
  (3) Race discrimination, in violation of Title VII (against the Defendants)
  (4) Retaliation, in violation of Title VII (against the Defendants);
  (5) Sex and race discrimination, in violation of Title 20 of the State Government Article of the Maryland Code, Md. Code Ann., State Gov't §§ 20-601, *et seq.* (against the Defendants); and
  (6) Intentional infliction of emotional distress (against Borgese).

*See* Compl.

motion. ECF No. 6. On November 26, 2012, Borgese replied. ECF No. 7.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Borgese's Motion to Dismiss

Borgese argues that the complaint should be dismissed because he is not an "employer" under Title VII and Title 20,[11] and because Taylor failed to provide adequate notice of her Title 20 claim and claim for intentional infliction of emotional distress ("IIED") under the Local Government Tort Claims Act[12] (the "LGTCA"). ECF No. 4-1 at 3-7. Borgese further argues that Taylor's IIED claim is "far too conclusory" to "meet the high burden for stating a claim." *Id.* at 7-9. Taylor contends that Borgese had "sufficient supervisory authority" over her to qualify as an "agent" of the County under Title VII and Title 20; she substantially complied with the LGTCA's notice

---

[11] Borgese alternatively argues that Taylor failed to administratively exhaust her Title 20 claim against him because her Charge of Discrimination did not name him as a respondent. ECF No. 4-1 at 4-6.

[12] Md. Code Ann., Cts. & Jud. Proc. §§ 5-301, *et seq.*

7

requirements (or should be excused from the requirements); and Borgese "did in fact engage in outrageous conduct." ECF No. 6 at 1-7. Taylor alternatively seeks leave to amend the complaint. *Id.* at 7.

1. Title VII Claims (Counts I-IV)[13]

Title VII prohibits "employers" from "discriminat[ing] against any person with respect to h[er] compensation, terms, conditions, or privileges of employment," because of the person's race or sex. 42 U.S.C. § 2000e-2(a). Although Title VII defines "employer" as "a person engaged in an industry affecting commerce who has [15] or more employees for each working day in each of [20] or more calendar weeks in the current or preceding calendar year, and any agent of such a person," *id.* § 2000e(b), the U.S. Court of Appeals for the Fourth Circuit has joined numerous other circuits in holding that the statute does not provide for causes of action against supervisory defendants in their individual capacities.[14]

---

[13] It is unclear, from the face of the complaint, whether Count I ("Sexual Harassment and Discrimination") arises under Title VII, Title 20, or both statutes. *See* Compl. at 6. Taylor has since clarified that it is a Title VII claim. *See* ECF No. 6 at 1, 3.

[14] *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *see also Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) ("[S]upervisors are not liable in their individual capacities for Title VII violations."); *Wilson v. Dimario*, 139 F.3d 897 (Table), 1998 WL 168346 (4th Cir. 1998) (per curiam) ("[T]he department or agency head is the *only* proper defendant

The complaint does not indicate that Borgese was sued in his official capacity. *See generally* Compl. Further, suing Borgese in his official capacity would be the same as suing the County, which is already a defendant. *See Bradley v. Balt. Police Dep't*, No. JKB-11-1799, 2012 WL 4321738, at *2 (D. Md. Sept. 19, 2012).

Accordingly, Taylor's Title VII claims (Counts I through IV) will be dismissed as to Borgese.[15]

---

in cases alleging a violation of Title VII." (emphasis in original)).

[15] Taylor argues that dismissal is "premature" in light of *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989), *vacated in part on other grounds on reh'g per curiam*, 900 F.2d 27 (4th Cir. 1990) (en banc). In *Paroline*, the plaintiff claimed that Edgar L. Moore, an employee of Unisys, had sexually harassed her at work and in social interactions. *Id.* at 102. The district court granted summary judgment for Unisys and Moore on Paroline's claims for, *inter alia*, sexual harassment under Title VII. *Id.* On appeal, the Fourth Circuit held that the district court had erred in granting summary judgment for Moore on Paroline's Title VII claims. *Id.* at 104. The court explained that "[a]n individual qualifies as an 'employer' under Title VII if he . . . serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing[,] or conditions of employment." *Id.* Because there was evidence that Moore had participated in Paroline's interview and recommended her hiring, the court held that there was a genuine dispute of material fact about whether Moore was Unisys's "agent" and thus Paroline's "employer" for Title VII purposes. *Id.*

Despite this language, the Fourth Circuit has since unambiguously held that supervisory liability is unavailable under Title VII. *See, e.g., Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510-11 (4th Cir. 1994) (interpreting the Age Discrimination in Employment Act's (the "ADEA") definition of employer--which is practically identical to Title VII's--and holding that the similar "and any agent" language is merely a statement of respondeat superior liability); *see also Lissau*,

2. Title 20 Claims (Count V)

Title 20 prohibits "employer[s]" from "fail[ing] or refus[ing] to hire, discharg[ing], or otherwise discriminat[ing] against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's race . . . sex . . . [or] sexual orientation." State Gov't § 20-606(a)(1)(i). Title 20's definition of "employer" is practically identical to Title VII's: "employer" means "a person that . . . is engaged in an industry or business; and . . . has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year; and . . . an agent of [such] person." *Id.* § 20-601(d)(1).

Maryland courts "traditionally seek guidance from federal cases in interpreting [Title 20]." *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007); *see also Bishop v. Bd. of Educ. of Calvert Cnty.*, 2011 WL 2651246, at *9 (D. Md. July 5, 2011) ("Maryland courts routinely look to Title VII cases to determine the scope of liability under Title 20."), *aff'd*, 466 F. App'x 261 (4th Cir. 2012). In light of Maryland courts'

---

159 F.3d at 180 ("[S]upervisors are not liable in their individual capacities for Title VII violations."). Taylor has not cited--and the Court has not found--any Fourth Circuit case relying on this aspect of *Paroline*'s holding since *Lissau*. *Paroline*'s holding as to supervisor liability under Title VII-- although never formally overruled--is not controlling.

10

broad reliance on Title VII caselaw, this Court has previously held that whether a person is an "employer" under Title 20 is governed by the same analysis. *Jackson v. Balt. Police Dep't*, No. WDQ-11-3569, 2013 WL 1121412, at *4 n.14 (D. Md. Mar. 15, 2013). As stated above, Borgese is not an "employer" under Title VII. *See supra* Part II.B.1. Borgese is not an "employer" under Title 20 for the same reasons.

Thus, Taylor's Title 20 claim (Count V) will be dismissed as to Borgese.[16]

### 3. Intentional Infliction of Emotional Distress (Count VI)

#### a. The LGTCA's Notice Requirement

Under the LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Cts. & Jud. Proc. § 5-304(b)(1).[17] The notice provision is a condition precedent to maintaining an action for damages against a local government or its employees. *Bibum v. Prince George's Cnty.*, 85 F. Supp. 2d

---

[16] The Court need not consider Borgese's alternative argument that Taylor failed to exhaust her administrative remedies because she did not name him in her Charge of Discrimination. *See* ECF No. 4-1 at 4-6.

[17] The notice must state, in writing, the time, place, and cause of the injury. Cts. & Jud. Proc. § 5-304(b)(2). In Anne Arundel County, a claimant or her representative must provide notice in person or by certified mail, return receipt requested, to the County Solicitor or County Attorney. *Id.* § 5-304(c)(1), (c)(3)(iii).

11

557, 564 (D. Md. 2000) (*citing Grubbs v. Prince George's Cnty.*, 297 A.2d 754, 755-56 (Md. 1972)). Thus, compliance with the provision should be alleged in the complaint as a substantive element of the cause of action. *Hansen v. City of Laurel*, 25 A.3d 122, 131 (Md. 2011); *Madore v. Balt. Cnty.*, 367 A.2d 54, 56 (Md. Ct. Spec. App. 1976). However, the notice requirement may be waived if the plaintiff can show good cause for failure to comply, *and* if the defendant cannot demonstrate prejudice therefrom. Cts. & Jud. Proc. § 5-304(d).

Taylor appears to concede that she did not strictly comply with the LGTCA's notice requirement. *See* ECF No. 6 at 3. She argues, however, that she "substantially complied" with the requirement by filing an EEOC Charge, and--in the alternative-- the requirement should be waived for good cause. *See id.* at 3-5. Borgese describes Taylor's reliance on her administrative filing as "misplaced." *See* ECF No. 7 at 3-7.

"Courts have accepted 'substantial compliance' in lieu of technical compliance if the plaintiff fulfills the purpose of the statute by apprising the proper local officials that plaintiff is pursuing a claim." *Carter v. Jess*, 179 F. Supp. 2d 534, 541 (D. Md. 2001). "The purpose of the statute clearly would seem to be to have the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to ascertain the character and

12

extent of the injury and its responsibility in connection with it." *Jackson v. Bd. of Cnty. Comm'rs of Anne Arundel Cnty.*, 195 A.2d 693, 695 (Md. 1963). Thus, "[t]here must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Moore v. Norouzi*, 807 A.2d 632, 643 (Md. 2002).

Taylor first notified "management" of her intention to file an EEOC Charge--based on Borgese's sexual harassment--in early February 2011. Compl. ¶¶ 30-31. Borgese was aware of Taylor's intention, as evidenced by his "[leading of] an unprecedented further investigation" to "overcome" her evidence. *Id.* ¶ 32. In an attachment to her amended Charge of Discrimination, filed October 17, 2011, Taylor described--in detail--the facts underlying her discrimination, hostile work environment, and retaliation claims. *See generally* ECF No. 6-2 at 1-2. All relate to Borgese's alleged harassment. *Id.* Taylor states--and there is evidence showing--that the County Attorney's Office, which initially represented Borgese,[18] received the amended

---

[18] Until June 2013, the Defendants were represented by Senior Assistant County Attorney William Dickerson, Esquire. *See* docket. On June 19, 2013, the Court granted Dickerson's motion to withdraw as counsel for "Defendant" after he accepted employment with the Maryland-National Capital Park and Planning Commission. *See* ECF Nos. 9, 10. Senior Assistant County Attorney Jay H. Creech, Esquire has entered his appearance for the County, but not for Borgese. ECF No. 9. It is unclear whether the omission was intentional or inadvertent. However, under the LGTCA, "[e]ach local government shall provide for its

Charge about one year after the alleged discrimination occurred. ECF No. 6 at 4; see ECF No. 7 at 5; ECF No. 7-1. Although technically untimely under § 5-304(b)(1), the above information sufficiently put Borgese on notice of Taylor's claim for IIED arising out of the same alleged misconduct.[19]

Because the complaint pleads facts suggesting that Taylor satisfied the purpose--if not the letter--of the LGTCA's notice requirement, the Court will not dismiss Taylor's IIED claim against Borgese on this basis.[20]

---

employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government." Cts. & Jud. Proc. § 5-302(a).

[19] See also, e.g., Nelson v. City of Crisfield, No. BEL-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5, 2010) (EEOC notice substantially complied with LGTCA's notice provision because, inter alia, it provided "notice of the exact nature of [the plaintiff's] claim at a time when [the City] could conduct its own investigation"); Williams v. Bd. of Trs. of Frederick Cmty. Coll., No. Civ.A. CCB03CV2123, 2004 WL 45517, at *5 (D. Md. Jan. 8, 2004) (EEOC charge alleging violations of Title VII gave adequate notice of plaintiff's claim for violation of equal protection, because the claims were "parallel[]").

[20] Cf. Hansen, 25 A.3d at 137 ("A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in . . . her complaint.").
Taylor's claim also survives because she has shown good cause for any noncompliance with the notice provision, and Borgese has failed to demonstrate prejudice resulting therefrom. See Cts. & Jud. Proc. § 5-304(d); Moore, 807 A.2d at 641 ("The test for whether good cause exists to permit waiver is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." (internal quotation marks omitted)); see also id.

b. Failure to State a Claim

To state a claim for IIED, a plaintiff must show four elements: (1) intentional or reckless conduct; (2) that is "extreme and outrageous"; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is "severe." *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (internal quotation marks omitted). "Extreme and outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as extreme and outrageous; where reasonable men may differ, it is for the jury to determine . . . ." *Harris v. Jones*, 380 A.2d 611, 615 (Md. 1977).

In the 30 years since the Maryland Court of Appeals first recognized IIED as a cognizable tort, it has upheld such claims only four times. *Lasater*, 5 A.3d at 79 (*citing Faya v. Almaraz*, 620 A.2d 327 (Md. 1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo-Torres v. Nickel*, 584 A.2d 69 (Md.

---

("The question of whether there is good cause to waive the notice requirement is within the discretion of the trial court.").

15

1991) (reversing dismissal when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.*, 538 A.2d 1175 (Md. 1988) (cause of action for IIED could exist when physician had sex with nurse without informing her he had herpes and infected her with the disease); *Young v. Hartford Accident & Indem. Co.*, 492 A.2d 1270 (Md. 1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide)).

"As inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) (Davis, J.). This case is no exception. Accepting Taylor's well-pled allegations as true,[21] Borgese's behavior--although reprehensible--is not so extreme or outrageous as to be actionable under Maryland tort law. *Harris*, 380 A.2d at 615; *see Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986) (to be extreme and outrageous, conduct must "strike to the very core of

---

[21] *Brockington*, 637 F.3d at 505.

one's being, threatening to shatter the frame upon which one's emotional fabric is hung"; conduct that is "rude, insensitive, callous, and in poor taste" does not suffice"). Neither are there facts to support Taylor's conclusionary statement that she "has suffered and will continue to suffer emotional distress, humiliation, and embarrassment." Compl. ¶ 108. Certainly, the complaint does not plausibly allege that Taylor's emotional distress was "severe." See generally Compl.[22]

Thus, Taylor's claim for IIED (Count VI) will be dismissed.

III. Conclusion

For the reasons stated above, Borgese's motion to dismiss will be granted.

_____8/15/13_____
Date

_____/s/ signature_____
William D. Quarles, Jr.
United States District Judge

---

[22] Apparently anticipating dismissal of her IIED claim, Taylor requests leave to amend that count. See ECF No. 6 at 7. The Court will consider such a request, and Borgese's response thereto, if and when it is presented by formal motion.

17